IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANNY BRUMFELD #540997 )<br>And JOSH ANDERSON #527057, )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>ROBERT ARNOLD, et al., )<br>)<br>    Defendants. ) | Case No. 3:15-cv-01269<br><br>Judge Trauger |

**MEMORANDUM**

Danny Brumfeld and Josh Anderson, both current or former convicted inmates of the Rutherford County Adult Detention Center in Murfreesboro, Tennessee, filed a *pro se* complaint for alleged violations of their civil rights pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and 42 U.S.C. § 1997e.

    I.    **Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), or brought by a prisoner-plaintiff against government entities or officials, 28 U.S.C. § 1915A, or challenging the conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Pro se* status, however, does not exempt a plaintiff from compliance with relevant rules of procedural and substantive law. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in pro se suits."); *see also Brown v. Matauszak*, 415 F. App'x 608, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (citation and internal quotation marks omitted).

## II. Factual Allegations

The complaint concerns conditions of confinement at the Rutherford County Adult Detention Center. Specifically, it alleges that on October 28, 2015, lights remained on all night, that three people (the named plaintiffs and a third inmate) were housed in a two-man cell requiring one man to sleep on the floor, that 25 people only had three hours within which to shower, and that outgoing mail was read by staff. It also alleges that on October 29, 2015, the plaintiffs were on lockdown without sunshine or fresh air (but with air conditioning) for 24 hours. Further, the complaint alleges that there is no law library at the detention center, and that inmates are charged for medical, housekeeping and hygiene supplies.

## III. Analysis

This action is brought under 42 U.S.C. § 1983 to vindicate alleged violations of federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the

Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

The Eighth Amendment prohibits conditions of confinement that involve "the wanton and unnecessary infliction of pain," that are "grossly disproportionate to the severity of the crime," or that result in the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* Rather, to violate the constitution, the alleged conditions must result in the deprivation of a basic human need, such as food, warmth, or exercise. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). In other words, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

The plaintiffs' allegations, though they implicate the Eighth Amendment, do not demonstrate that the conditions at the detention center "fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Rhodes*, 452 U.S. at 347). Specifically, overcrowding *per se* does not violate the constitution, and the complaint does not claim that the allegedly overcrowded conditions actually caused harm or resulted in an unconstitutional denial of a basic need. *Cf. Rhodes*, 452 U.S. at 347–48 (holding that "double-celling" did not violate the Eighth Amendment); *Argamonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("[O]vercrowding is not, in itself, a constitutional violation, and the plaintiffs have not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation). The plaintiffs do not identify any physical harm to them or deprivation of a basic need arising from the crowded conditions in their cells or showers, and their claims therefore do not give rise to a constitutional violation.

Similarly, the alleged denial of sunlight and fresh air while on lockdown, without any allegations of serious medical need or harm suffered as a result of the deprivation, does not amount to a violation of constitutional rights. There is no applicable precedent requiring any particular minimum amount of

outdoor recreation for prisoners. *See Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (observing that the Sixth Circuit has never set a minimum amount of outdoor time for inmates). Many courts in this circuit and elsewhere have dismissed claims of lack of outdoor recreation for failure to state a claim. *E.g., Park v. Morgan*, No. 1:15-cv-182, 2015 WL 1637168, at *2–3 (S.D. Ohio April 10, 2015) (collecting cases and dismissing claim that 60-day recreation restriction, preventing plaintiff from receiving fresh air or sunlight, violated 8th Amendment); *Pastorious v. Romer*, No. 96–1126, 1996 WL 528359, at *1 (10th Cir. Sept. 17, 1996) (affirming the district court's dismissal of an action as frivolous where the inmate alleged he was denied fresh air and direct sunlight), *cert. denied*, 520 U.S. 1199 (1997); *Richard v. Reed*, 49 F.Supp.2d 485, 487 (E.D .Va. 1999) (dismissing prisoner's complaint that he did not get any direct exposure to sunlight because of prison's requirement that all recreational and other activities take place indoors), *aff'd*, No. 6783, 1999 WL 651846 (4th Cir. Aug. 26, 1999).

Although having lights on all night in the jail may be unpleasant for some inmates, it is not inhumane. The complaint does not allege that the lighting deprives the plaintiffs of sleep, but only that it "mess[es] with" the vision of one of the plaintiffs. The complaint does not provide sufficient detail from which the court could find this "messing" with one plaintiff's vision to be a serious medical issue or even actual harm, and the lighting itself does not amount to a constitutional violation. *See Chavarria v. Stacks*, 102 F. App'x 433, 435 (5th Cir. 2004) (holding that constant illumination of a prison administrative unit at night in order to prevent guards from being assaulted was a reasonable security measure and thus did not violate the Eighth Amendment); *Zatko v. Rowland*, 835 F.Supp. 1174, 1181 (N.D.Cal. 1993) (finding no constitutional violation in continuous lighting because it was not used to keep the prisoner awake); *Williams v. Ward*, 567 F.Supp. 10, 15 (E.D.N.Y. 1982) (holding that continuous hallway lighting for security purposes was not a constitutional violation even where plaintiff claimed he was unable to sleep).

With regard to the lack of privacy in outgoing mail, the complaint does not allege that this includes legal mail, so the court presumes that legal mail is not implicated by this claim. Inmates have a First Amendment right to communicate by mail. *Thornburg v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safely*, 482 U.S. 78, 85 (1987). But corrections officials may constitutionally impinge on that right if doing so "further[s] an important or substantial governmental interest unrelated to the suppression of expression, and ... [if it] extend[s] no further than is necessary or essential to the protection of the

particular governmental interest involved." *Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991) (quoting *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)). The legitimate government interests in outgoing mail include, but are "not limited to, escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh*, 490 U.S. at 412. "It is thus well-settled that prison or jail personnel do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal mail." *Frey v. Raisanen*, No. 2:14–cv–10192, 2014 WL 545794, at *2 (E.D.Mich. Feb.11, 2014) (citing *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (prison officials did not violate the First Amendment by reading inmate's outgoing mail to his family); *Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999) (opening and inspecting an inmate's outgoing mail is reasonably related to legitimate penological interests and does not violate the First Amendment); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); *Stow v. Grimaldi*, 993 F.2d 1002, 1004–05 (1st Cir.1993) (state prison practice requiring that non-privileged outgoing mail be submitted for inspection in unsealed envelopes did not violate prisoner's constitutional rights); *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir. 1991) ("[I]t is well established that prisons have sound reasons for reading the outgoing mail of their inmates."); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding prison regulations authorizing the inspection of incoming and outgoing nonlegal mail)); *see also Meadows v. Hopkins*, 713 F.2d 206 (6th Cir. 1983) (upholding a prison regulation which authorized the reading of all prisoners' general correspondence). Accordingly, the plaintiffs' claim about lack of privacy in their outgoing mail fails to state a constitutional claim.

The plaintiffs notably do not allege that they have been deprived of medical care or basic minimal hygiene; they allege only that they have been charged for such care and items. In the absence of any allegation that serious needs are going unmet due to failure or inability to pay, there is nothing unconstitutional about charging inmates fees for medical care or commissary products. *See Bailey v. Carter*, 15 F. App'x 245, 250 (6th Cir. 2001) (holding that Ohio law requiring fees for inmate medical visits did not violate Eighth or Fourteenth Amendments); *Knuckles v. Almli*, No. 2:07-CV-68, 2007 WL 2480511, at *2 (W.D. Mich. Aug. 29, 2007) ("Plaintiff's inability resulting from his unemployment to buy soap, toothpaste and deodorant does not amount to a denial of 'the minimal civilized measure of life's

necessities,' but is instead 'unpleasant.'").

Finally, the constitution does not provide an abstract, free-standing right to a law library. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Prisons must enable inmates to exercise their right to access the courts by providing libraries or alternative sources of legal knowledge, as well as the tools to draft and authenticate legal filings and postage to submit them. *Bounds v. Smith*, 430 U.S. 817, 824–25 (1977). But to state a claim for infringement on the right to access the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349. In other words, a plaintiff must plead and demonstrate that the lack of access to legal materials has hindered, or is presently hindering, his efforts to pursue a non-frivolous legal claim. *Id.* at 351–53. Further, the Supreme Court squarely held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Thus, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417–18. The current complaint fails to allege any injury to non-frivolous legal claims, and thus fails to state a claim for violation of the right to access the courts.

Moreover, even if the complaint substantively stated a claim in the abstract, both named defendants would have to be dismissed. Beyond naming him as a defendant, the complaint does not even mention Robert Arnold or otherwise establish his personal involvement in any of the alleged violations, as required to establish his liability under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005). And the Rutherford County Adult Detention Center itself is not a "person" subject to suit under § 1983. *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (county jail is a department of the county and not a legal entity susceptible to suit); *Travis v. Clinton Cnty. Jail*, No. 1:10-cv-1276, 2011 WL 447000, at *2 (W.D. Mich. Feb.4, 2011) ("The jail is a building, not an entity capable of being sued in its own right.").

## IV. CONCLUSION

For the reasons set forth above, this action will be dismissed with prejudice for failure to state a claim upon which relief can be granted. An appropriate order is filed herewith.

_____
Aleta A. Trauger
United States District Judge